# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| JENNIFER OLIVER,<br><br>                                 Plaintiff,<br><br>v.<br><br>CHILD WELFARE SERVICES OF SAN DIEGO,<br><br>                                 Defendant. | Case No.:  3:25-cv-01372-RBM-MSB<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[Doc. 11]** |
|---|---|

Pending before the Court is Defendant Child Welfare Services of San Diego's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss"). (Doc. 11.) *Pro se* Plaintiff Jennifer Oliver ("Plaintiff") filed an Opposition to Defendant County of San Diego's Motion to Dismiss First Amended Complaint. (Doc. 12.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  Having reviewed the filings above, and for the reasons discussed below, Defendant's Motion to Dismiss (Doc. 11) is **<u>GRANTED</u>**.

1

# I.    BACKGROUND

## A.    Procedural History

The original Complaint was removed from state court on May 30, 2025.  (Doc. 1.) Defendant moved to dismiss the original Complaint, and that motion to dismiss was fully briefed on July 28, 2026.  (*See* Docs. 3–5.)  The Court granted the motion to dismiss, allowing Plaintiff leave to amend four of her claims.  (Doc. 6.)  On January 8, 2026, Plaintiff filed her FAC. (Doc. 10.)  Defendant moved to dismiss the FAC, and that motion to dismiss was fully briefed on March 2, 2026.  (*See* Docs. 11–12.)

## B.    Factual Background[1]

This action arises from a child welfare investigation initiated by Defendant on or about May 3, 2021 that resulted in (1) Plaintiff's child being removed from Plaintiff's custody between June 2021 and September 2024 and (2) Plaintiff being subjected to dependency proceedings during roughly that same time period.  (*See* First Amended Complaint ("FAC") [Doc. 10] ¶¶ 9–10, 16.)[2]

On or about May 3, 2021, a social worker working for Defendant "conducted a visit related to Plaintiff's minor child and imposed a coercive safety plan that interfered with Plaintiff's parental rights and required Plaintiff to leave her child unattended during emotional episodes." (*Id.* ¶ 7.)  The following month, other County Child Welfare Services employees "sought and obtained a Protective Custody Warrant by submitting materially false and misleading information to the juvenile court, while omitting exculpatory medical

---

[1]  The factual summary in this section reflects Plaintiff's allegations, not conclusions of fact or law by this Court.  Well-pled factual allegations are accepted as true for purposes of the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, the First Amended Complaint abandons several of the claims raised in the original Complaint. (*Compare* Doc. 1 *with* FAC.)  Because an amended complaint supersedes the original complaint, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), the Court considers only the claims and allegations in the First Amended Complaint.

[2]  The Court cites the paragraph numbers of the First Amended Complaint and the CM/ECF electronic pagination for other filings unless otherwise noted.

and mental health information that contradicted claims of imminent danger." (*Id.* ¶ 8.) "Throughout the dependency proceedings, County employees repeatedly suppressed or withheld medical, mental health, and educational records, misrepresented the child's condition to the court, and obstructed Plaintiff's ability to advocate for appropriate placement, services, and reunification." (*Id.* ¶ 10.)

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under [Rule] 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (internal citation omitted). An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court liberally construes a *pro se* plaintiff's pleadings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but "may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997).

## III.    DISCUSSION

Plaintiff asserts two causes of action: (1) a claim for violation of Plaintiff's First[3]

---

[3] Although the FAC does not reference the First Amendment by name, it does allege that Defendant violated Plaintiff's "fundamental right to familial association." (FAC ¶ 20.) "The Ninth Circuit has recognized a First Amendment familial association claim." *Kaur*

3:25-cv-01372-RBM-MSB

and Fourteenth Amendment rights under 42 U.S.C. § 1983 and (2) a claim for violation of the Americans with Disabilities Act ("ADA").  (*See* FAC ¶¶ 19–30.)  The Court addresses these in reverse order.

**A.     ADA Claim (Count Two)**

Plaintiff argues that she "has standing to assert this claim both as an individual denied the benefits of County services by reason of her association with a qualified individual with a disability, and as a person directly harmed by the County's discriminatory administration of its programs." (*Id.* ¶ 25.)  She argues that Defendant denied meaningful access to "public services, programs, and activities . . . by reason of the child's disability." (*Id.* ¶¶ 28–29.)

The Court previously dismissed Plaintiff's ADA claims to the extent they were asserted on behalf of her child:

> Defendant argues that Plaintiff's claims referencing alleged violations of [the child's] constitutional rights must be dismissed because "constitutional claims are personal and cannot be asserted vicariously." *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876–77 (9th Cir. 1997) ("we hold that a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer"); *see also Grizzell v. San Elijo Elementary Sch.*, 110 F.4th 1177, 1181 (9th Cir. 2024) (noting that courts in the Ninth Circuit are "bound by *Johns*, which holds that a parent may not proceed *pro se* on her children's behalf).  The Court agrees. . . .  Accordingly, to the extent Plaintiff seeks to vicariously assert claims on [her child's] behalf, those claims are dismissed with leave to amend.

(Doc. 6 at 5–6 (cleaned up).)

Plaintiff provides no authority for her argument that she has standing to assert an ADA claim "by reason of her association with a qualified individual." (FAC ¶ 25.)  She argues that the Ninth Circuit in *McGary* "confirmed that the ADA protects individuals

---

*v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017) (citing *Lee v. City of L.A.*, 250 F.3d 668, 685–86 (9th Cir. 2001)), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Construing the FAC liberally, as it must, the Court finds that Plaintiff may be raising a First Amendment familial association claim.

associated with disabled persons and reversed dismissal of associational discrimination claims." (Doc. 12 at 3–4 (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).) *McGary* is not an associational discrimination case, nor does it stand for the proposition Plaintiff argues it does. However, in light of Plaintiff's *pro se* status, the Court addresses associational standing.

A plaintiff bringing an associational discrimination claim "derive[s] their individual right to sue . . . solely through their association with their disabled children." *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1287–88 (D. Or. 2001) (citations omitted). To bring an associational discrimination claim, "a plaintiff must allege some 'specific, direct, and separate injury' as a result of association with a disabled individual." *Id.* at 1288 (quoting *Micek v. City of Chicago*, No. 98 C 6757, 1999 WL 966970, at *3 (N.D. Ill. Oct. 4, 1999)). For example, in *Glass*, the parents of a disabled child brought an associational discrimination claim against the child's school, alleging that they were discriminated against because their experts were denied access to their children's special education classroom. *Id.* at 1292. The court denied the parents' claim, reasoning that "they did not attempt to exercise some independent and separate right to have access to the classroom for *their own* benefit." *Prescott v. Rady Children's Hosp. – San Diego*, Case No.: 16-cv-02408-BTM-JMA, 2018 WL 2193649, at *3 (S.D. Cal. May 11, 2018) (discussing *Glass*, 142 F. Supp. 2d at 1292) (emphasis in original). Compare this to *Prescott*, where the court allowed an associational discrimination claim to proceed past a motion to dismiss because the mother of a transgender child alleged that *she* was harmed by association with her child. *Id.* at *4.[4] Specifically, the mother alleged that because she called her child's school to report accounts of bullying and misgendering, the school blocked *the mother's* phone number and prevented *the mother* from requesting updates

---

[4] Although *Prescott* was a sex discrimination, rather than a disability discrimination, associational discrimination case, the court's analysis is directly on point with the issue here.

3:25-cv-01372-RBM-MSB

about her child.  *Id.*

Here, Plaintiff's associational discrimination claim is closer to the claim in *Glass* than to the claim in *Prescott*.  Plaintiff alleges that Defendant denied the benefits of public services, such as mental health treatment and educational accommodations, to her child. (FAC ¶ 28.)  Plaintiff does not sufficiently allege how the denial of such services to her child constituted a specific, direct, and separate harm to Plaintiff.  *See Glass*, 142 F. Supp. 2d at 1288.  She includes one conclusory sentence: "As a result, Plaintiff suffered harm, including prolonged separation from her child, emotional distress, and ongoing injury." (FAC ¶ 30.)  But those harms are not linked to the denial of services to her child.  As such, Plaintiff's associational discrimination claim fails to state a plausible claim under Rules 8 or 12(b)(6).

To the extent Plaintiff attempts to plead a direct ADA claim, that claim fares no better.  Title II of the ADA, 42 U.S.C. § 12132, states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim of disability discrimination under § 12132, Plaintiff must allege:

> (1) [s]he is an individual with a disability; (2) [s]he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) [s]he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [her] disability.

*McGary*, 386 F.3d at 1265 (internal citation omitted).

Here, Plaintiff's ADA claim fails to meet these elements.  She does not plead that she "is an individual with a disability."  *McGary*, 386 F.3d at 1265.  Nor does she plead that she was denied a "public entity's services, programs or activities" because of her disability.  *Id.*  Even construing the FAC liberally, Plaintiff pleads only that *her child* has a disability, that *her child* was denied services, and that such denials would not have

3:25-cv-01372-RBM-MSB

occurred but for *her child's* disability.  (*See* FAC ¶¶ 28–29.)  Plaintiff's ADA claim thus does not meet the pleading standards and must be dismissed.

The Court will give Plaintiff one final opportunity to amend her complaint.  If she chooses to amend her ADA claim, she must adequately plead that she, individually, meets the four requirements discussed above.  She **MUST NOT** continue to argue that she may bring an ADA claim *pro se* on behalf of her child; this argument conflicts with binding Ninth Circuit precedent, and the Court has rejected it twice now.

**B.    42 U.S.C. § 1983 Claim (Count One)**

Plaintiff argues that Defendant, "acting under color of state law, deprived Plaintiff of her clearly established constitutional rights, including her fundamental right to familial association and her rights to substantive and procedural due process under the Fourteenth Amendment." (FAC ¶ 20.)  Plaintiff argues that these constitutional violations were caused by the County's policies, customs, and practices, including: (1) "[s]eeking and maintaining dependency jurisdiction through false or misleading information provided to the court;" (2) "[s]uppressing or failing to disclose exculpatory medical, mental health, and educational evidence;" (3) "ratifying noncompliance with court orders regarding placement and reunification;" and (4) "[f]ailing to train and supervise child welfare employees regarding constitutional limits on child removal, the duty of candor to the court, and the protection of parental rights." (*Id.* ¶ 21.)

Defendant argues first that Plaintiff's § 1983 claim is time-barred under the two-year statute of limitations because the County's allegedly wrongful child welfare investigation and removal of [the child] from Plaintiff's custody occurred and accrued in 2021.  (Doc. 11-1 at 5–6.)  Defendant argues second that Plaintiff's *Monell* claim must be dismissed because she has not pled a policy or custom that inflicted her alleged constitutional injuries, nor that Defendant was deliberately indifferent to her rights.[5]  (*Id.* at 6–8.)

---

[5]  *Monell* refers to the United States Supreme Court's decision in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

3:25-cv-01372-RBM-MSB

### 1.   Timeliness

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). "Federal law, however, governs when a claim accrues." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). "A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Id.*

The Court previously found that "Plaintiff may seek relief only on the basis of discrete acts that occurred on or after April 22, 2023." (Doc. 6 at 9.)  In so doing, the Court rejected Plaintiff's arguments that (1) her claims were timely under the continuing violations doctrine and (2) she was entitled to equitable tolling. (*See id.* at 7–9 (finding that the continuing violations doctrine applies only to hostile work environment claims and class-wide pattern or practice claims, neither of which are at issue here); *id.* at 15–16 ("Defendant's allegedly deficient conduct cannot provide a basis for equitable tolling because it came *after* Plaintiff missed her deadline . . . .").)  The Court therefore dismissed Plaintiff's *Monell* claim with leave to amend to "allege additional facts that describe . . . timely discrete acts" or to "provide additional reasons for the Court to consider her equitable tolling argument." (*Id.* at 9.)  Rather than allege such facts or reasons, Plaintiff removed nearly all dates from the FAC (*see generally* FAC) and again invoked the continuing violations doctrine (Doc. 12 at 3).  The Court thus again finds that Plaintiff's alleged injuries that occurred before April 22, 2023 are time-barred.

### 2.   *Monell*

Even if Plaintiff had adequately pled that she was entitled to equitable tolling, her *Monell* claim would fail.  Plaintiff may recover under *Monell* through any of three theories: (1) if Defendant's "official policies or established customs inflict[ed] the constitutional injury;" (2) if Defendant's omissions "amount[ed] to deliberate indifference to a constitutional right;" or (3) if the individuals who committed the constitutional torts were

3:25-cv-01372-RBM-MSB

"official[s] with final policy-making authority." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010)[6] (citing *Monell*, 436 U.S. at 708) (cleaned up). Plaintiff does not allege facts sufficient to support any of the three theories.

### a.    Policy or Custom

"Absent a formal governmental policy," to proceed under this theory, Plaintiff "must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (cleaned up). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citations omitted). It is an open question as to "what number of similar incidents would be sufficient to constitute a custom or policy." *Oyenik v. Corizon Health, Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (finding that "one or two incidents are insufficient to establish a custom or policy" but also that "[t]here is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual").

Regardless of the answer to that question, the FAC lacks the requisite detail to establish that Defendant had a custom or policy that resulted in her alleged constitutional violations. The FAC cites no other incidents of similar conduct by Defendant and speaks only in conclusory allegations that do not enable the Court to determine whether Defendant's custom is sufficiently widespread and persistent under *Monell*. (*See* FAC ¶ 10 (Defendant "repeatedly suppressed or withheld medical, mental health, and educational records"), ¶ 11 (Defendant "repeatedly failed to comply with court orders"), ¶ 13 (Defendant "terminated or obstructed mental health and educational services for the

---

[6] *Overruled on other grounds by Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016).

3:25-cv-01372-RBM-MSB

child").)  The Court "is not required to accept legal conclusions cast in the form of factual assertions if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").

### b.   Failure to Act

To impose liability against Defendant under this second theory, Plaintiff "must show: (1) that a County employee violated [Plaintiff's] rights; (2) that the County has customs or policies that amount to deliberate indifference . . . ; and (3) that these policies were the moving force behind the employee's violation of [Plaintiff's] constitutional rights," such that Defendant "could have prevented the violation with an appropriate policy." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1193–94 (9th Cir. 2002).  Deliberate indifference is a "stringent standard of fault," requiring proof that "policymakers are on actual or constructive notice that a particular omission . . . causes city employees to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).  "Mere negligence in training or supervision . . . does not give rise to a *Monell* claim.  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal citation omitted).

As it did with the custom or policy theory, the Court finds that the FAC states only conclusory facts as to Defendant's policies and fails to establish a causal link between those policies and Plaintiff's alleged constitutional violations.

### c.   Official with Policy-Making Authority

"[A] local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).  "There must, however, be evidence of a conscious, affirmative choice"

10

by the authorized policymaker "to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Gillette*, 979 F.2d at 1347 (citations omitted).

The Court previously found that "Plaintiff does not allege facts sufficient to support [this] theory, nor does she argue in her Opposition that [this] theory is appropriate here." (Doc. 6 at 10.) The Court only addresses this theory now because Plaintiff alleges in the FAC that "County supervisors, County counsel, and other policymakers were aware of these practices through court proceedings, reports, and repeated hearings, and nevertheless permitted the dependency case to continue without correction." (FAC ¶ 14.) This lone sentence, detached from any further factual allegations, does not meet any of the requirements, described above, to prevail on this theory. Plaintiff does not identify an official with policy-making authority or "evidence of a conscious, affirmative choice" by such an official. *See Gillette*, 979 F.2d at 1347.

In summary, Plaintiff has not met her burden to show that her claims are based on incidents occurring after April 22, 2023 or that she is entitled to equitable tolling. But even if she had, the FAC lacks the factual allegations required to establish that Defendant is liable under any of the three *Monell* theories. Still, a complaint filed *pro se* should not be dismissed without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (cleaned up). Because futility is not "absolutely clear," the Court will grant Plaintiff one final opportunity to amend her complaint. If she chooses to amend her *Monell* claim, she must fix the inadequacies described above.

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 11). Both counts are **DISMISSED with leave to amend**. Plaintiff may file a second amended complaint in accordance with the directives above on or before **August 17, 2026**. The second amended complaint must be complete in itself, without reference to any previous pleading. *See* S.D. Cal. Civ. R. 15.1; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928

3:25-cv-01372-RBM-MSB

(9th Cir. 2012) (noting that claims dismissed with leave to amend may be "considered waived if not repled").

The Court notes that, in light of Plaintiff's *pro se* status, the Court has excused Plaintiff's failure to comply with several of the directives in the Court's previous Order dismissing the original complaint. The Court cautions Plaintiff that if she again fails to file an amended complaint in compliance with this Order, the Court may dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to obey a court order.

**IT IS SO ORDERED.**

Dated: July 17, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:25-cv-01372-RBM-MSB